IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**RUTH M. HERBIN**
8045 Glimmerglass Avenue
Las Vegas, NV 89178

    Plaintiff,

  v.

**MIDDLETON-CROSS PLAINS AREA SCHOOL DISTRICT**
7106 South Avenue
Middleton, WI 53562

    Defendant.

Case No.: 19-cv-416

JURY TRIAL DEMANDED

# COMPLAINT

Plaintiff, Ruth M. Herbin ("Herbin"), through her attorneys, Hawks Quindel, S.C., by Aaron N. Halstead and Colin B. Good, for her Complaint against Defendant, Middleton Cross-Plains Area School District ("District"), states and alleges as follows:

## SUMMARY OF CLAIMS

Herbin, who is White, claims the District discriminated against her on the basis of her race and gender when it refused to consider her for three newly-vacant positions working with students at Middleton High School ("High School") and terminated her employment in retaliation for complaining about it, both of which constitute violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and § 1981 of the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991 ("§ 1981").

On August 24, 2017, Matthew Ecklund ("Ecklund"), the head of the search committee for the vacant positions and Dean of Students at the High School, told Herbin that she had "no chance" for the vacant positions because "we need more diversity," adding, "we need some big Black men working here." The District eventually hired two Black men and one Black woman to fill the three vacant positions.

On August 26, 2017, Herbin submitted an application for the vacant positions and filed an internal complaint with the District regarding Ecklund's comments. Ecklund, in consultation with the Associate Principal, Omar Rodriguez ("Rodriguez"), and Head Principal, Steven Plank ("Plank"), later determined that the search committee would not consider Herbin's application.

On September 7, 2017, Plank and Director of Employee Services, Tabatha Gundrum ("Gundrum"), met with Herbin to discuss the allegations in her discrimination complaint. Gundrum informed Herbin that Ecklund had admitted to using language similar to that alleged by Herbin in her complaint, but stated that the District would not discipline Ecklund or remove him from the search committee as a result of his remarks.

On September 14, 2017, Gundrum and Plank summoned Herbin to Plank's office and began discussing alleged performance concerns arising from years earlier. Herbin said she thought the meeting was called to discuss her discrimination complaint and asked to speak with an attorney. She then left the meeting over Gundrum's objections. Gundrum and Plank, in consultation with District

Superintendent George Marvroulis ("Marvroulis"), terminated Herbin's employment one day later for alleged insubordination.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Herbin's Title VII and § 1981 claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. 2000e-5(f)(3) as well as Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981 because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

2. Venue is appropriate in the Western District of Wisconsin under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3) because the District operates schools in the Western District of Wisconsin, the unlawful employment practices alleged herein occurred in this District and all parties resided in this District at all times relevant to this Complaint

3. Diversity jurisdiction also exists pursuant to 28 U.S.C. 1332(a)(1) because this is a dispute between citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00.

## PROCEDURAL HISTORY AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Herbin filed a Discrimination Complaint with the State of Wisconsin Department of Workforce Development Equal Rights Division ("ERD"), on or about November 29, 2017. Pursuant to the work-sharing agreement between the ERD and the United States Equal Employment Opportunity Commission ("EEOC"), the ERD

investigated the Complaint and made an Initial Determination finding probable cause.

5. Herbin requested to withdraw her ERD Complaint in order to pursue her claims under Title VII and § 1981.

6. Prior to filing this Complaint, Herbin obtained a Notice of Right to Sue from the EEOC dated February 25, 2019, which was received by Herbin's counsel on February 27, 2019. A true and correct copy of the February 25, 2019, Notice of Right to Sue is attached and incorporated herein as Exhibit A.

7. Herbin files this Complaint within 90 days of her receipt of the Notice of Right to Sue.

## PARTIES

8. Plaintiff, Ruth M. Herbin, is an adult resident of the State of Nevada but previously resided in Middleton and was employed by the District from October 29, 2007, until her termination on September 15, 2017.

9. Defendant, Middleton-Cross Plains Area School District, is a common school district organized under the laws of Wisconsin, located in Dane County, Wisconsin.

10. The District consists of six elementary schools, two middle schools, a charter school and the High School. The acts and omissions alleged herein took place at the High School, within this judicial district.

## FACTUAL ALLEGATIONS

11. Herbin, who is a Caucasian woman, was first employed by the District on October 29, 2007, as a Substitute Support Staff Paraprofessional.

12. The District promoted Herbin to Dean's Assistant at the High School on December 19, 2007, and she continued in that position, which required direct involvement with students, including discipline and relationship building, through the end of the 2007-2008 school year.

13. Herbin subsequently applied for and moved into a position as an Administrative Assistant to the Dean of Students at the High School on August 12, 2008, a position she held until shortly before her termination on September 15, 2017.

14. There are two "Houses" at the High School, White Spruce and Red Maple. During all times relevant to this Complaint, Herbin was the Administrative Assistant to the Dean of Students in White Spruce and Linda Bremmer ("Bremmer") was the Administrative Assistant to the Dean of Students in Red Maple.

15. Ecklund was the Dean of Students for White Spruce and Cody Lundquist ("Lundquist") was the Dean of Students for Red Maple at all times relevant to this Complaint.

16. As an Administrative Assistant to the Dean of Students, Herbin was responsible for assisting Ecklund as well as for maintaining attendance records of approximately 1,000 students, preparing disciplinary letters for suspension, truancy and expulsion, and communicating with parents, students, administrators, and outside agencies concerning sensitive student matters.

17. Herbin had regular and meaningful interactions with students on a daily basis, many of whom regularly sought her advice and counsel about navigating challenging school issues.

18. Herbin was a dedicated and productive employee throughout her ten-year tenure with the District, and received positive performance evaluations and merit raises throughout her employment at the High School.

19. Indeed, Herbin never received any written warnings or directives during her employment with the District, which maintains a progressive discipline system.

20. Herbin's last formal annual evaluation, conducted on June 23, 2016, by her then-supervisor, Charles Murphree, indicated that she was "incredibly professional" and "offers to help others when other staff are absent."

21. The June 23, 2016, evaluation, in which Murphree stated that Herbin "exceeded standards" in each of the categories listed, concluded that Herbin was "an important member of the W[hite] S[pruce] Team."

22. On August 17, 2017, Herbin met with Rodriguez and Ecklund to discuss changes they were making to the Student Services Department.

23. Ecklund and Rodriguez explained to Herbin that her position title, as well as Bremmer's, was changing from "Administrative Assistant to the Dean of Students" to "Administrative Assistant to Student Services," and that each of them would be supporting staff other than the respective Deans of each House.

24. Ecklund further explained that the positions were being restructured because he believed there was not enough clerical work for Herbin or Bremmer to perform for the Deans, exclusively, and that he was therefore enlarging the level of support provided to include a team of three counselors and a social worker within the High School.

25. Herbin was receptive to the changes in her position but began looking for other positions within the District, which included vacancies in Campus and Student Support positions at both Glacier Creek Middle School and the High School.

26. Three members of the Campus and Student Support team at the High School had left before the beginning of the 2017-2018 school year, creating a crisis.

27. The Campus and Student Support position at the High School, which Herbin had previously held in 2008 when it was called the Dean's Assistant position, focused mostly on developing positive relationships with students while maintaining school security.

28. Herbin had already developed positive relationships with students, teachers, and staff in her position as the Administrative Assistant to the Dean of Students and thought she would be a good fit for the Campus and Student Support positions at both schools.

29. The three members of the six member Campus and Student Support team who left before the beginning of the 2017-2018 school year were Harold Carson ("Carson") and James Adams ("Adams"), who are Black, and Alejandra Vazquez ("Vazquez"), who is Latina.

30. There had been tension and conflict between the six-member Campus and Student Support team for a few years, including a heated verbal altercation between Carson and Adams earlier that school year, which required a District investigation and discipline, and two occurrences where Amy Wepfer ("Wepfer") threw away personal property belonging to Vazquez and Kent Weiler ("Weiler"), which also required District involvement.

31. On August 24, 2017, Herbin spoke with Ecklund about applying for one of the newly-advertised Campus and Student Support positions at the High School.

32. Ecklund, who led the hiring committee and would ultimately supervise the position, told Herbin she had "no chance" for the position because "we need more diversity," later adding during that same conversation, "we need some big black men working here."

33. On August 26, 2017, Herbin filed an internal discrimination complaint with the High School alleging sex and race discrimination.

34. Gundrum received Herbin's complaint on the same day she filed it.

35. Ecklund learned of Herbin's complaint on the same day she filed it.

36. Herbin's internal complaint stated the following: "On Thursday, August 24, 2017, I had a conversation with Mr. Ecklund in his office at approximately 4:15 p.m. The topic discussed was whether or not I should apply for one of the newly posted Campus Support positions at MHS. Mr. Ecklund said to me 'you have no chance.' When I asked why he stated that 'more diversity' was needed. He went on to say that 'we need some big black men working here.'"

8

37. Herbin also stated in her complaint: "I will be applying for the Campus Support position. I would like to be given full consideration for this position without gender or race discrimination."

38. That same day, Herbin applied for the Campus and Student Support Position at the High School.

39. Prior to September 7, 2017, Gundrum and Plank met with Ecklund to investigate the allegations in Herbin's internal complaint.

40. During the investigatory meeting, Ecklund admitted that he had told Herbin that the hiring committee was looking for particular types of people, specifically mentioning the need for more diversity.

41. Ecklund further admitted during the investigatory meeting that the search committee was looking for the most qualified candidates, but acknowledged that it would be beneficial to hire Black men because they were replacing the positions previously held by Carson and Adams.

42. On September 7, 2017, Gundrum and Plank met with Herbin to discuss her complaint, and conveyed to Herbin that Ecklund had essentially admitted to them what Herbin alleged in her internal complaint.

43. Gundrum and Plank further told Herbin that despite Ecklund's admissions, he would not be disciplined for his statements and would not be removed from the hiring committee for the Campus and Student Support position.

44. Gundrum also told Herbin that they would meet again soon to discuss some alleged concerns they had about her work performance.

9

45. Herbin had never received any written warnings or directives for any reasons throughout her tenure at the High School.

46. As Gundrum and Plank had indicated, Ecklund did remain in charge of the hiring committee for the Campus and Student Support position after Herbin filed her complaint and application. Further, on information and belief, the District never disciplined Ecklund for his above-described statements to Herbin.

47. Ecklund, who never consulted any District policies on how to conduct a candidate search, was responsible for initially screening all of the applicants for the position.

48. Even though the District maintains a hiring policy, no one on the hiring committee received training about those policies or how to conduct a formal candidate search prior to beginning the Campus and Student Support search.

49. Candidates for the Campus and Student Support position submitted application materials to the District and their name and the date they applied for the position appeared on an electronic database accessible by the District called WECAN (Wisconsin Education Career Access Network), to which Ecklund had access.

50. Ecklund reviewed the list of applicants on WECAN a few times a day and made recommendations for candidate interviews to Rodriguez and Lundquist, who were also part of the search committee.

51. Other members of the search committee included Wepfer, Weiland, and Tyler Loether, a security officer at the High School.

52. None of the members of the search committee were given a list of the candidates' qualifications before the interviews for the Campus and Student Support position.

53. None of the persons in charge of the search committee—Ecklund, Rodriguez, and Lundquist—provided the other search committee's members with a list of qualifications to be used in assessing a candidate's eligibility for the Campus and Student Support position before the interviews.

54. Ecklund and Rodriguez were responsible for drafting and distributing the questions to the other members of the search committee, who took turns asking those questions during the candidate interviews.

55. Even though Ecklund knew Herbin's Dean's Assistant position had involved responsibilities similar to those required by the Campus and Student Support position, and that she had worked closely with students, teachers, and staff for nearly ten years at the High School in her capacity as Administrative Assistant to the Dean of Students, he refused to grant her an interview for the Campus and Student Support position.

56. Ecklund consulted with Rodriguez and Plank on the decision not to grant Herbin an interview.

57. All three knew Herbin had filed a discrimination complaint against Ecklund at the time they decided not to grant her an interview.

58. Ecklund stated he and the others did not believe Herbin deserved an interview because she had a negative attitude, despite never having disciplined her for it.

59. Ecklund also indicated that he did not extend an interview to Herbin because of her alleged personal conflicts with Wepfer, one of the search committee's members.

60. At the time of the interviews for the vacant Campus and Student Support positions, Wepfer was already the subject of at least two District investigations into her conflicts with other members of the Campus and Student Support team.

61. Ecklund, Plank, and Rodriguez made the decision not to grant Herbin an interview after she had filed her internal complaint.

62. Ecklund did grant interviews to several candidates who were employed elsewhere in the District, including Omar Reed, a Black male, who was a custodian at one of the middle schools.

63. Ecklund also extended an interview to Chaz Jones ("Jones"), a Black male, who was recommended by Lundquist as a potential hire.

64. Ecklund later extended an employment offer to Jones even though Ecklund knew that Jones had an interpersonal conflict with an existing staff member at the High School with whom he would have had direct contact.

65. In all, the hiring committee interviewed eleven candidates for the three Campus and Student Support positions, nine of whom were men and two of whom were women.

66. Of the nine men interviewed for the position, five were Black, one was Latino, and three were White, one of whom, Jerry Raffel, was an internal candidate.

67. Of the two women interviewed for the position, one was Black, Cynthia Hart ("Hart"), and one was White and had previously worked as a paraprofessional at the High School.

68. Hart, who had no experience in education at the time of her application, was recommended to the hiring committee by Gundrum, who had met Hart at a job fair.

69. The hiring committee eventually hired Treanor Seals (Black), Dion Huff (Black), and Hart (Black) into the three vacant Campus and Student Support positions.

70. Hart was terminated on March 8, 2018, after working less than seven months at the High School.

71. On September 14, 2017, after Ecklund refused to grant Herbin an interview for the Campus and Student Support vacancies, Gundrum required Herbin to meet with her and Plank to discuss their alleged concerns regarding her work performance.

72. Gundrum began the meeting by discussing alleged performance concerns dating from 2010, which had been resolved shortly thereafter.

73. Herbin indicated that she thought the meeting was called to discuss her discrimination complaint against Ecklund and that she wanted to review her personnel file before discussing any more of these alleged issues, a copy of which she had requested and received a week before.

74. When Gundrum insisted that Herbin stay and listen to her concerns, Herbin told Gundrum that she needed to speak with an attorney and left the meeting.

75. Gundrum then conferred with legal counsel and Marvroulis about her intention to terminate Herbin's employment.

76. Gundrum told Marvroulis that she and Plank had met with Herbin to go over some job performance concerns, that they were going to talk to her about a plan for improvement, and that she became upset, said something about talking to an attorney, and walked out of the meeting.

77. After her conversation with Marvroulis, Gundrum fired Herbin for alleged insubordination.

78. The District hired Shameka Price, a Black woman, to replace Herbin.

**HERBIN'S FIRST CAUSE OF ACTION: DISPARATE TREATMENT ON THE BASIS OF HER SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2 *et seq.***

79. Herbin incorporates and realleges the facts described above.

80. By engaging in the conduct alleged above, the District, by and through its duly authorized agents, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, thereby causing injury and damages to Herbin.

81. Herbin has experienced harm and damages as a result of the District's discrimination against her on the basis of her sex.

**HERBIN'S SECOND CAUSE OF ACTION: DISPARATE TREATMENT ON THE BASIS OF HER RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2 *et seq.***

82. Herbin reincorporates and realleges the facts described above.

83. By engaging in the conduct alleged above, the District, by and through its duly authorized agents, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., thereby causing injury and damages to Herbin.

84. Moreover, background circumstances alleged herein demonstrate that the District had reason or inclination to discriminate invidiously against Whites and/or evidence that there was something fishy about the facts at hand.

85. Herbin has experienced harm and damages as a result of the District's discrimination against her on the basis of her race.

**HERBIN'S THIRD CAUSE OF ACTION: DISPARATE TREATMENT ON THE BASIS OF HER RACE IN VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866, AS AMENDED, 42 U.S.C. § 1981.**

86. Herbin reincorporates and realleges the facts described above.

87. The District violated Herbin's right to be free from discrimination in the terms and condition of employment on the basis of her race secured to her by § 1981 of the Civil Rights Act of 1866, as amended, when she was terminated or denied employment.

88. Moreover, background circumstances alleged herein demonstrate that the District had reason or inclination to discriminate invidiously against Whites and/or evidence that there was something fishy about the facts at hand.

89. Herbin has experienced harm and damages as a result of the District's discrimination against her on the basis of her race.

## HERBIN'S FOURTH CAUSE OF ACTION: DISPARATE IMPACT ON THE BASIS OF HER SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2 *et seq.*

90. Herbin reincorporates and realleges the facts described above.

91. By engaging in the conduct alleged above, the District, by and through its duly authorized agents, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., thereby causing injury and damages to Herbin.

92. The District has engaged in an intentional, District-wide, and systematic policy, pattern, and/or practice of discrimination against its female employees. The District has intentionally discriminated against Herbin in violation of Title VII by, among others: utilizing a biased hiring system; utilizing a biased promotion system; failing to take reasonable and adequate steps to prevent and correct the use of standardless, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

93. These District-wide policies are intended to and do have the effect of: denying Herbin and others employment opportunities because of her/their gender; failing to promote her/them because of gender; and providing her/them with inferior

terms and conditions of employment as result of discriminatory performance measures that systematically disadvantaged her/them because of gender.

94. As a direct result of the District's discriminatory policies and/or practices described above, Herbin has suffered damages including, but not limited to, lost past and future incomes, compensation, and benefits.

### HERBIN'S FIFTH CAUSE OF ACTION: DISPARATE IMPACT ON THE BASIS OF HER RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2 *et seq.*

95. Herbin reincorporates and realleges the facts described above.

96. By engaging in the conduct alleged above, the District, by and through its duly authorized agents, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. et seq., thereby causing injury and damages to Herbin.

97. The District has engaged in an intentional, District-wide, and systematic policy, pattern, and/or practice of discrimination against its Caucasian employees. The District has intentionally discriminated against Herbin in violation of Title VII by, among others: utilizing a biased hiring system; utilizing a biased promotion system; failing to take reasonable and adequate steps to prevent and correct the use of standardless, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment.

98. These District-wide policies are intended to and do have the effect of: denying Herbin and others employment opportunities because of her/their race; failing to promote her/them because of race; and providing her/them with inferior

terms and conditions of employment as result of discriminatory performance measures that systematically disadvantaged her/them because of race.

99. As a direct result of the District's discriminatory policies and/or practices described above, Herbin has suffered damages including, but not limited to, lost past and future incomes, compensation, and benefits.

## HERBIN'S SIXTH CAUSE OF ACTION: RETALIATION (REFUSAL TO HIRE) IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2 *et seq.*

100. Herbin incorporates and realleges the facts described above.

101. Herbin engaged in protected activities, including making an internal complaint of unlawful discrimination regarding the District's discriminatory hiring policies and practices.

102. The District took adverse actions against Herbin by failing or refusing to consider her for the vacant Campus and Student Support position with the purpose of retaliating against her because of her participation in protected activities, and Herbin suffered damages as a result of that conduct.

## HERBIN'S SEVENTH CAUSE OF ACTION: RETALIATION (TERMINATION) IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2, *et seq.*

103. Herbin incorporates and realleges the facts described above.

104. Herbin engaged in protected activities, including making an internal complaint of unlawful discrimination regarding the District's discriminatory hiring policies and practices.

105. The District took adverse actions against Herbin by terminating her employment with the purpose of retaliating against her because of her protected activities, and Herbin suffered damages as a result of that conduct.

**WHEREFORE**, Herbin demands Judgment against the District, awarding her:

A. Back pay and all other compensation, including interest and benefits;

B. Compensatory damages for past and future losses resulting from the unlawful employment practices, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation;

C. Pre- and post-judgment interest;

D. An award of Herbin's reasonable attorneys' fees, reasonable expert fees, and costs incurred in this action; and

E. Such other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff respectfully requests that this matter be tried before a jury of six competent persons.

Dated this 21st day of May, 2019.

        **HAWKS QUINDEL, S.C.**
        *Attorneys for Plaintiff, Ruth M. Herbin*

        By: */s/ Colin B. Good*
        Aaron N. Halstead, State Bar No.: 1001507
        Email: ahalstead@hq-law.com
        Colin B. Good, State Bar No.: 1061355
        Email: cgood@hq-law.com
        409 East Main Street
        Post Office Box 2155
        Madison, Wisconsin 53701-2155
        Telephone: (608) 257-0040
        Facsimile: (608) 256-0236